UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number:  19-25285-CIV-MARTINEZ-OTAZO-REYES**

KIRK PEARE,

      Plaintiff,

vs.

CARNIVAL CORPORATION,

      Defendant,

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Carnival Corporation's Motion for Summary Judgment, (ECF No. 61), and Plaintiff Kirk Peare's Partial Motion for Summary Judgment, (ECF No. 66).  This case concerns a dispute over liability for a slip and fall on the stairwell of a cruise ship.  After careful consideration of the briefing, materials in support thereof, and the record, the Court grants in part and denies in part Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

## I.    BACKGROUND[1]

On May 5, 2019, Plaintiff Kirk Peare ("Peare") boarded Defendant Carnival Corporation's vessel, the *Carnival Dream*, in New Orleans, Louisiana with his father, Douglas Peare.  (Def.'s Statement of Material Facts in Support of Mot. for Summ. J. ("Def SMF") ¶¶ 2–3, 6, ECF No. 60).

---

[1] The facts are undisputed unless stated otherwise.  Where the facts are in dispute, the Court construes them in favor of the non-moving party.

Peare and his father were on the cruise to participate in a poker tournament.  (Def. SMF ¶ 6).  Together, they had attended three similar cruises with poker tournaments.  (*Id*.).

Over the next several hours, Peare drank and gambled.  Starting shortly after boarding, Peare had a beer and "probably had a beer after that."  (Def. SMF ¶¶ 8–9).  He then returned to his room, ordered a couple of cases of water with his father, and then went to register for the poker tournament.  (Def. SMF ¶ 10).  After registering for the tournament, Peare played craps with his father for about an hour and a half.  (Def. SMF ¶ 11).  During that hour and a half, Peare consumed "probably six Hennessy and Cokes" and "was feeling good."  (Def. SMF ¶ 12).

Peare and his father then took a break from playing craps for a light dinner.  (Def. SMF ¶ 13; Aug. 5, 2021, Dep. of Kirk Peare ("Peare Dep.") at 45:12–19, ECF No. 61-1).  Peare had another beer at dinner.  (Def. SMF. ¶ 13).  After dinner, he went with his father to play poker.  (Def. SMF ¶ 14).  Peare was not playing well at poker and consumed two more drinks.  (Def. SMF ¶¶ 14–15).

Eventually, Peare stopped playing poker, started playing blackjack, ordered another cocktail, and had a cigarette.  (Def. SMF ¶ 16).  Then Peare had a beer with his fellow passenger, Nicole Amador, at a bar on the ship.  (Def. SMF ¶ 17).  Peare went with Amador to a nightclub where he had "another drink or two."  (Def. SMF ¶ 18).  Eventually, they left the nightclub and went outside.  (Kirk Dep. at 48:5–8).

At about 1:00 a.m. in the morning, Peare starting descending outdoor stairs and about four steps from the bottom, Peare slipped, and his feet flew out in front of him.  (Def. SMF ¶¶ 7, 20; Peare Dep. at 8:8–12, 48:12–14).  Peare put his hands down behind his back but when he landed at the bottom of the stairs his ankle rolled inward.  (Peare Dep. at 48:14–15; 55:8–13).  Peare noticed that his clothes and hands were wet.  (Peare Dep. at 48:16–19).  The parties dispute whether

Peare was holding the handrail when he fell.  (Def. SMF ¶ 21; Plf.'s Resp. to Def.'s Statement of Material Facts in Support of Summ. J. ("Plf.'s Opp. SMF") ¶ 21, ECF No. 77).  Defendant points to Peare's Deposition where, in response to the question asking whether Peare "was holding the railing on the staircase when [he] was walking down," Peare stated: "I don't recall.  I could have been, or post-COVID I don't know if I would, you know.  There's been times where I held the railing, going downstairs and there's been times where I haven't.  I – I don't recall."  (Def's SMF ¶ 21; Peare Dep. at 70:25–71:4).  Plaintiff cites to the Errata Sheet from his deposition where he corrects the quoted statement to read, "I believe I was holding the railing.  It was dark and I usually hold railing when walking on stairs in the dark."  (Errata Sheet at 4, ECF No. 64-2).  The reason listed on the Errata Sheet for the correction was that Peare "[m]isunderstood the question t[o] be asking for 100% certainty."  (*Id.*).

The parties also disagree about the condition of the stairs at the time of the fall.  Defendant cites to Peare's deposition testimony stating that Peare did not notice when he was descending the stairs that they were loose or that the gripping was worn.  (Def. SMF ¶¶ 22–23; Peare Dep. at 101:4–9).  Peare responds, quoting from his deposition, that "those stairs were not well lit" and "it may have been even loose, the gripping on them may not have been that good there."  (Peare Dep. at 100:23–101:2).  Peare did testify, however, that even though it was dark, he was looking in front of himself and "could see each individual step in front of [him]."  (Peare Dep. at 101:12– 21).

After the fall, Peare stood up and tried to walk on his ankle but something "didn't feel right."  (Def. SMF ¶ 25).  His ankle "felt like something was moving or clicking in there."  (Def. SMF ¶ 25; Peare Dep. at 48:25–49:3).  After resting for eight to ten minutes with Amador outside, Peare returned to the nightclub and tried to dance.  (Def. SMF ¶ 26; Peare Dep. at 49:13–24).  Peare

3

does not remember if they closed the nightclub or if he left on his own accord, but Peare eventually returned to his room on his own.  (Def. SMF ¶ 27; Peare Dep. at 50:7–11).

When Peare woke up the next morning, his ankle was swollen and "black and blue."  (Def. SMF ¶ 28; Peare Dep. at 50:22–25).  He spent the day in his cabin resting.  (Peare Dep. at 51:19–21).  The next day, when the *Carnival Dream* was at port, Peare called the infirmary.  (Def. SMF ¶ 29).  Someone from Carnival arrived with a wheelchair "immediately," within fifteen to twenty minutes, to take Peare to the infirmary.  (Def. SMF ¶ 30; Peare Dep. at 67:20–24).  At the infirmary, Peare met with a doctor who examined him, and the doctor took an X-ray of Peare's ankle.  (Def. SMF ¶ 31; Peare Dep. at 68:5–21).  The X-ray showed a fractured ankle.  (Def. SMF ¶ 31).  The doctor put a cast on the Peare's ankle and advised Peare to see a doctor as soon as he returned home.  (Def. SMF ¶ 31; Kirk Dep. at 68:14–21).

Before Peare left the infirmary, he gave a written statement.  He wrote the statement while he "was in a lot of pain" and "just wanted to get out [of the infirmary]."  (Peare Dep. at 77:16–21).  Peare's statement said that he believed wet stairs caused his fall.  (Def. SMF ¶ 35).  Peare did not believe alcohol contributed to his fall because he was in "good shape" and even though he "had a buzz" was "definitely capable of walking down the stairs."  (Peare Dep. at 81:12–21).

In December 2019, Peare filed suit against Carnival, asserting two counts of negligence against Carnival.  (Compl. ¶¶ 30–66).  Count one alleges Carnival is directly liable for negligent maintenance and failure to warn (Compl. ¶¶ 30–54); count two alleges Carnival is vicarious liability for the negligence of its crewmembers in overserving Peare alcohol (Compl. ¶¶ 55–66).

Carnival moves for summary judgment on both of Peare's claims.  (Def.'s Mot. at 6–12, ECF No. 61).  Peare moves for summary judgment on Carnival's fourth, fifth, and sixth affirmative defenses, as well as on the anticipated defense that Carnival will attempt to shift liability to the

4

shipbuilder for any fault in the stairs.  (Plf.'s Mot. at 3–10, ECF No. 66).  The motions are ripe for review and the Court evaluates each in turn.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A dispute is genuine if a "reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48).  A fact is material if "it would affect the outcome of the suit under the governing law."  *Id.* (citing *Anderson*, 477 U.S. at 247–48); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303–04 (11th Cir. 2016); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court does not weigh conflicting evidence or make credibility determinations.  *Furcron*, 843 F.3d at 1304; *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Upon such a showing, the burden of persuasion shifts to the nonmoving

party to "go beyond the pleadings" and "show[] that there is a genuine issue for trial." *Id.* at 324. If a genuine dispute of material fact exists, the Court must deny summary judgment. *See Skop*, 485 F.3d at 1141.

In addition, "[p]artial summary judgment may be granted on affirmative defenses." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-CIV-24668, 2021 U.S. Dist. LEXIS 42942, at *10–11 (S.D. Fla. Mar. 5, 2021). To enter judgment in favor of a plaintiff on defendant's affirmative defenses, "Plaintiff has the burden of showing that Defendant cannot maintain these defenses by a preponderance of the evidence." *Id.* at *11. Defendant "must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-CIV-24687, 2018 U.S. Dist. LEXIS 138178, *4 (S.D. Fla. Aug. 14, 2018), *adopted*, 2018 U.S. Dist. LEXIS 221597 (S.D. Fla. Aug. 27, 2018).

## III.   <u>DISCUSSION</u>

Both parties move for summary judgment. Carnival moves for summary judgment on Peare's negligence counts, while Peare moves for summary judgment on three of Carnival's affirmative defenses, as well as on a defense Peare anticipates Carnival presenting sometime in the future. The Court evaluates both motions under general maritime law because the incident at issue occurred on navigable waters. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). Under general maritime law, to establish negligence, plaintiff must show that "the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered the actual harm." *Francis v. MSC Cruises, S.A.*, No. 18-CIV-61463, 2021 U.S. Dist. LEXIS 120791, at *5 (S.D. Fla. June 29, 2021) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d

1333, 1336 (11th Cir. 2012)).  A shipowner owes a passenger "the duty of exercising reasonable

care under the circumstances of each case." *Kermarec v. Compagnie*, 358 U.S. 625, 632 (1959).

As explained below, the Court grants in part and denies in part Carnival's Motion for Summary

Judgment, and denies Plaintiff's Partial Motion for Summary Judgment.

    A.  **<u>Defendant's Motion for Summary Judgment</u>**

    1.  **Negligent Maintenance**

       Peare alleges that Carnival negligently maintained the stairs that Peare fell on because the

stairs were too slippery, the handrails were too low, and the lighting was too dim.  (Compl. ¶ 49).

Before imposing liability on a shipowner for negligence, the shipowner must be found to "have

had actual or constructive notice of a risk-creating condition, at least where, as here, the menace

is one commonly encountered on land and not clearly linked to nautical adventure." *Guevara v.*

*NCL (Bahamas) Ltd.*, 920 F.3d 710, 721 (11th Cir. 2019) (alteration adopted and citation omitted).

A plaintiff can establish constructive notice by showing that (1) the "defective condition existed

for a sufficient period of time to invite corrective measures," or (2) "evidence of substantially

similar incidents in which 'conditions substantially similar to the occurrence in question must have

caused the prior incident.'"  *Id.*

       Carnival moves for summary judgment on Peare's negligent maintenance claim, arguing

that it had no actual or constructive notice that the slipperiness, low handrails, or dim lighting

posed a danger to Peare.  (Def. Mot. at 6).  As to Peare's allegations regarding the stairs' handrails

and lighting, Carnival also disputes that those conditions caused Peare's fall.  (Def.'s Mot. at 7).

In response, Peare contends that Carnival had notice that the stairs were dangerous from (1) prior

falls on the stairs, (2) Carnival's meeting minutes stating that the "open deck staircases" were an

area of concern due to it being one of the "slippery areas," (3) industry standards, and (4) Carnival's policies and procedures. (Plf.'s Resp. at 6–15).

The Court first evaluates whether there is a genuine dispute of material fact as to Carnival's notice of the dangerousness of the stairs based on prior, substantially similar incidents. *See Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990) ("Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation."). For prior incidents to serve as evidence of notice, "conditions substantially similar to the occurrence in question must have caused the prior accident" and "the prior accident must not have occurred too remote in time." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988).

Related to this issue is the Motion in Limine filed by Carnival seeking to preclude the admission of certain prior incidents. (ECF No. 62). Magistrate Judge Otazo-Reyes conducted a hearing on the Motion and concluded that the incidents involving passengers Teresa Boester, Samuel Cribbs, and UK Citizen #1 were substantially similar to the incident here and admissible to show notice. (ECF No. 100 at 3). The Court agrees with Judge Otazo-Reyes's conclusion, particularly with respect to the similarity of Teresa Boester's incident, which involved the same vessel, the fall occurred on the 3rd or 4th step, and alcohol may have contributed to the incident. (Def.'s 2d Am. Answers to Plf.'s First Interrogs. at 11–12, ECF No. 78-3). Accordingly, there is a genuine dispute of material fact as to Carnival's notice about the dangerousness of the stairs. Therefore, the Court declines to enter judgment in favor of Carnival based on lack of notice.

Separately, the Court rejects Carnival's contention that because the stairs satisfied friction requirements, they were not inherently dangerous. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d

1275, 1282 (11th Cir. 2015) (noting that "evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence" and "[c]ompliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the facts the trier of fact may consider in applying the standard of care"). That Carnival complied with industry standards regarding friction may be evidence that the stairs were not slippery, but it is not conclusive of the issue.

The Court next turns to whether Carnival is entitled to summary judgment on Peare's negligent maintenance claim because the handrails and lighting did not cause Peare's fall.  "Under admiralty law, the plaintiff must show that the defendant's negligence actually and proximately caused the plaintiff's injury." *Easterwood v. Carnival Corp.*, No. 19-CIV-22932, 2020 U.S. Dist. LEXIS 224252, at *46 (S.D. Fla. Dec. 1, 2020) (citation omitted).  "To prove causation, a plaintiff must establish 'a cause and effect relationship . . . between the alleged tortious conduct and the injury'—otherwise referred to as 'cause-in-fact' or 'but-for' causation—as well as the 'foreseeability' of the 'conduct in question' producing the alleged harm—i.e., 'proximate causation.'"  *Id.* (alteration adopted and citation omitted).  Importantly, "[a] finding of proximate cause may not be based on speculation or conjecture." *Kellner v. NCL (Bahamas), Ltd.*, No. 15-CIV-23002, 2016 U.S. Dist. LEXIS 111777, at *3 (S.D. Fla. Aug. 22, 2016).  Foreseeability "is crucial to evaluating proximate cause" and while "the issue of foreseeability is ordinarily a question of fact for a jury to resolve, it may be decided by a court 'when facts are unequivocal, such as where the evidence supports no more than a single reasonable inference." *Palma v. BP Prods. N. Am., Inc.*, 347 F. App'x 526, 527–28 (11th Cir. 2009).  "And while Plaintiff need not eliminate every alternate cause, []he must present 'evidence from which reasonable persons can say that on the whole it is more likely than not that negligence was associated with the cause of

the event." *Phillips v. Delta Air Lines*, No. 21-CIV-80413, 2021 U.S. Dist. LEXIS 228639, at *13 (S.D. Fla. Nov. 30, 2021) (alterations adopted).

Peare alleges that Carnival failed "to provide adequate handrails that Plaintiff could have used to prevent or mitigate his fall" and failed "to provide adequate lighting in the subject area." (Compl. ¶ 49). Plaintiff's expert, Franciso de Caso, Ph.D., prepared a report concluding that the increased risk of slipping and falling on the stairs was due to a combination of the following factors: (1) "[d]eficient and inadequate artificial lighting," (2) "[d]efective nosing on two steps," and (3) "[r]elative substandard surface traction of the nosings." (Sept. 8, 2021, Francisco Caso Expert Report at 22, ECF No. 60-6). Caso's Report also found that the height of the handrails did not satisfy the IMO Maritime Safety Committee requirement that handrails be fixed 850 mm (33.5 inches) above tread, which created an "unsafe condition[.]" (*Id.* at 19). In contrast, Carnival's expert, Mark A. Young, P.E., prepared a report stating that the handrails were within the acceptable handrail height based on safety codes, the stairs were well illuminated, and the steps met appropriate friction standards. (Sept. 7, 2021, Mark A. Young, P.E., Expert Report at 3–4, ECF No. 60-5).

Carnival contends that even if the handrails were too low, they did not cause Peare's fall because Peare did not reach for or hold onto the handrails. In Peare's deposition, Peare stated that he could not recall whether he held onto the handrail when he was descending the stairs. (Def's SMF ¶ 21; Peare Dep. at 70:25–71:4). Peare states in the Errata Sheet to this deposition that he misunderstood the question and meant to say "I believe I was holding the railing. It was dark and I usually hold railings when walking on stairs in the dark." (Errata Sheet at 4, ECF No. 64-2). Carnival did not challenge the corrections made in the Errata Sheet. (*See* ECF No. 101 at 6). As

to the lighting of the stairs, Peare testified that it was dark, but he could see each individual step in front of him.  (Peare Dep. at 11:12–21).

Although there is some debate in this Circuit about whether a deponent can make substantive changes to testimony through an errata sheet,[2] the Court does not find that Peare's testimony about the handrails—corrected or not—is dispositive of Carnival's supposed negligent maintenance.  Both versions of Peare's testimony are speculative as to whether Peare was holding onto the handrail when he was descending the stairs upon which he fell.  A reasonable juror, however, could find that the reason why Peare did not hold onto the handrail was because the handrail height was too low, which caused him to fall.  The parties also presented conflicting expert evidence regarding the illumination of the stairs where Peare fell.  Interpreting the evidence in the light most favorable to Peare, there is a genuine dispute of material fact as to whether the height of the handrail and the lighting of the stairs were negligently maintained and caused Peare's fall.  Accordingly, summary judgment in favor of Carnival on the basis that the handrails and lighting did not cause Peare's fall is denied.

**2.  Failure to Warn**

Peare alleges that Carnival failed to warn him of the "risk-creating conditions of the stairs, area, and the vicinity."  (Compl. ¶ 49(e); *see also* Compl. ¶ 19).  Carnival moves for summary judgment on Peare's failure to warn claim, arguing that it lacked notice of any dangers on the stairs

---

[2] *See Jacobs v. Chadbourne*, 733 F. App'x 483, 486 (11th Cir. 2018) (concluding that district court did not err by disregarding substantive changes to deposition testimony that contradicted the testimony); *Architectural Ingenieria Siglo XXI, LLC v. Dom. Rep.*, No. 13-20544, 2016 U.S. Dist. LEXIS 186226, at *2–3 (S.D. Fla. Dec. 14, 2016) (noting how courts are divided in their reading of Federal Rule of Civil Procedure 30(1)(1)(B), and that the Eleventh Circuit Court of Appeals has not resolved this debate).

and had no duty to warn because any liquid on the stairs would have been open and obvious. (Def.'s Mot. at 9).  As previously discussed, substantially similar incidents create a genuine issue of material fact as to Carnival's constructive notice regarding the dangers of the stairs.  In addition, the minutes from Carnival's January 2018 Safety Focus Team Meeting "stressed the importance" of "*slippery areas on* lido deck dining areas and *open deck staircases*."  (January 2018 Meeting Minutes at 11, ECF No. 78-4) (emphasis added).  Summary judgment for Carnival based on its supposed lack of notice is denied.

With respect to Carnival's duty to warn, this duty is limited to "known dangers which are not apparent and obvious."  *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015).  Here, there is genuine issue of material fact as to the open and obvious nature of the liquid on the stairs because Peare testified during his deposition that he did not see any liquid on the stairs when he was descending them, but when he fell, he felt that his hands and clothes were wet.  (Peare Dep. at 48:12–19, 102:21–24, 104:6–11).  In addition, Plaintiff's expert reported that the stairs upon which Peare fell had "[r]elative substandard surface traction of the nosings."  (Caso Report at 222).  The Court must deny summary judgment for Carnival on Peare's failure to warn claim.  *See Frasca v. NCL (Bah.), Ltd.*, 654 F. App'x 949, 953 (11th Cir. 2016) (holding that district court erred in granting summary judgment for defendant where plaintiff's expert report suggested "that the deck in question [was] *unreasonably* slippery when wet" such that "[a] jury could credit the expert's testimony and conclude that the deck's visible wetness and the weather conditions would not alert a reasonable observer to the *extent* of the deck's slipperiness" (emphasis in original)).

### 3. **Vicarious Liability**

Peare alleges that Carnival is vicariously liability for its crewmembers' negligence in overserving Peare alcohol. (Compl. ¶¶ 49, 55–66). "For over service of alcohol cases, the facts must show 'that a reasonable defendant would have been on notice of the impending danger to the plaintiff. . . . Accordingly, the intoxicated passenger's behavior is relevant to the determination that Defendant . . . was on notice of the danger.'" *Webb v. Carnival Corp.*, 360 F. Supp. 3d 1339, 1344 (S.D. Fla. 2017) (citation omitted). At the same time, notice that a passenger is intoxicated is "not always [] sufficient to put a defendant on notice that the passenger is in serious danger." *Id.* (citation omitted).

There is no dispute that Peare drank continuously throughout the day. (Def.'s Mot. at 11). The parties concede, however, that by the time Peare finished his last drink in the early morning hours, he "was not exhibiting signs or symptoms of someone who was overly intoxicated to the point that a Carnival crewmember believed that he was a danger to himself or others and needed his alcohol purchasing privileges revoked." (Def. SMF ¶ 38; Plf. SMF ¶ 38). Carnival also points to Peare's deposition testimony, where Peare testified that he was "definitely capable of walking down the stairs." (Peare Dep. at 81:9–21). In fact, in response to Defendant's Motion for Summary Judgment, Plaintiff states that "Defendant is correct that Plaintiff believes he was not overly intoxicated at the time of his incident." (Plf.'s Resp. at 17, ECF No. 78).

Here, Plaintiff presents no evidence showing that anyone was on notice that he was intoxicated. Indeed, Plaintiff did not even believe he was intoxicated. Summary judgment is therefore appropriate on Count II for vicarious liability for overservice of alcohol because Carnival did not breach a duty to refrain from overserving Plaintiff alcohol. *See Varner v. Celebration Cruise Operator, Inc*., No. 15-CIV-60867, 2016 U.S. Dist. LEXIS 137588, at *16–17 (S.D. Fla.

Sept. 30, 2016) (granting summary judgment in favor of defendant shipowner where "[p]laintiffs present[ed] no evidence tending to show that anyone, other than [Mr. Miller's] fiancé [ ], was on notice that he was intoxicated" even though "Plaintiffs produced evidence showing that Defendant served alcohol to Mr. Miller, sometimes in large quantities"). Summary judgment on Count II of the Complaint is entered in favor of Carnival.

### B. Plaintiff's Partial Motion for Summary Judgment

Plaintiff moves for summary judgment on Carnival's fourth, fifth, and sixth affirmative defenses. (Plf.'s Mot. at 6–10). Plaintiff also moves for summary judgment on a defense Plaintiff anticipates Carnival to make at trial. (*Id.* at 3–6). Plaintiff anticipates that Carnival "seeks to blame the empty chair defendant of the ship builder for the negligent design of the subject stairs," and argues that such a tactic "would be based on Florida's *Fabre* doctrine," which does not apply under general maritime law. (*Id.* at 66). Carnival has not raised a *Fabre* defense and concedes it approved the design of the vessel. The Court will not enter summary judgment against Carnival on an anticipated defense that Carnival has not raised or pled. To the extent the parties agree to an issue of fact, they may stipulate to that fact at trial.

Turning next to the affirmative defenses, Carnival agrees to withdraw its fourth and fifth affirmative defenses. (Def.'s Resp. at 76). Given Carnival's agreement, Plaintiff's Partial Motion for Summary Judgment is denied as moot as to defenses four and five.

The only affirmative defense at issue is the sixth, where "Defendant alleges that Plaintiff's injuries, if any, were proximately caused by the conduct of third parties, such as co-passengers, not subject to the control, supervision or direction of this Defendant, thereby precluding or diminishing Plaintiff's recovery herein." (Answer at 8, ECF No. 6). Plaintiff argues that summary judgment should be entered in its favor on this defense because there is no evidence to support the

14

defense and because Carnival, as a matter of law, cannot shift liability for the design of the stairs to the ship builder.  (Plf.'s Mot. at 9).  In response, Carnival argues that it does not seek to shift liability to the ship builder for the alleged dangerous condition of the stairs; rather, it utilizes this defense in response to Plaintiff's overservice of alcohol claim.  (Def.'s Resp. at 4).  Specifically, Carnival contends that Ms. Amador's conduct in purchasing Peare drinks towards the end of the night was an intervening and superseding cause of Peare's injury.  (*Id.*).  Stated differently, Amador's conduct in purchasing Peare drinks caused his injury.  (*Id.* at 5).

As discussed above, the Court is entering summary judgment in favor of Carnival on Plaintiff's vicarious liability claim for overservice of alcohol.  Accordingly, Carnival's sixth affirmative defense is also denied as moot.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1.    Defendant's Motion for Summary Judgment, (ECF No. 61), is **GRANTED IN PART AND DENIED IN PART** as stated herein.  Defendant's Motion for Summary Judgment as to Count II of Plaintiff's Complaint is **GRANTED**.  The remainder of Defendant's Motion for Summary Judgment is **DENIED**.

2.    Plaintiff's Partial Motion for Summary Judgment, (ECF No. 66), is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of February, 2022.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

15